## JOHN WEBBER & *al.* *vs.* DAVID MALLETT & *al.*

The mortgagor of an undivided portion of a tract of land cannot, without the consent of the mortgagee, by an after conveyance by metes and bounds of any part of the mortgaged premises, withdraw from the lien created by the mortgage the part so conveyed.

Where an undivided portion of a tract of land was conveyed, and the grantor afterwards conveyed to others particular parts by metes and bounds, and the grantee of the undivided portion then petitions for partition, his share of the land should be so set off and assigned as not to embrace any part of the land thus conveyed by metes and bounds, if he can otherwise have a fair and equal partition.

Where the extent of an execution is made on a specified number of acres in common and undivided in a township, as the property of one of the tenants in common thereof, it must be understood to mean such fractional proportion of the whole, as the number of acres taken bore to the whole number owned in common in the township by the debtor.

THIS was a petition for partition, wherein the petitioners claimed to have assigned to them in severalty 6478 acres in the township of *Lee.* To support their claim, the petitioners gave in evidence a deed of mortgage from one *Samuel T. Mallett,* dated *June* 5, 1827, of 6000 acres in the township, in common and undivided, to *Williams' College,* he then owning more than 7000 acres in the same township ; and a levy made by *Nathaniel Ingersoll, July* 18, 1832, on 478 acres in common and undivided in the same township, as the property of said *S. T. Mallett ;* and shew that the title of the College by the mortgage deed, and of *Ingersoll* by the levy was in them at the time of the institution of this process. It seems to have been taken as a fact, that the whole of the interest of *S. T. Mallett* in the township had been assigned to him by some mode of partition, after the mortgage was made to the College, but the time or mode, does not appear. The respondent, *Joseph Mallett,* read in evidence a deed of release from *S. T. Mallett* to him of all interest in the township, dated *May* 30, 1830, and the respondent *David Mallett* read a deed from *S. T. Mallett* to him conveying a tract of land, described, dated *August* 12, 1829. The other seven respondents claimed particular lots, described by their numbers under conveyances from *S. T. Mallett,* or his grantees, made after the mortgage to the College, and before the levy of *Ingersoll.*

The petitioners contended, that the deeds from *S. T. Mallett* to *Joseph* and *David Mallett*, his sons, were fraudulent as to his prior creditors, and void; and to prove the deed to *David* fraudulent, the petitioners offered evidence to shew, that the only consideration paid, was an obligation given by *David* to *Samuel* to support him during life, and that the deed to *Joseph* had been given to prevent *Ingersoll* from obtaining payment of his debt. The respondents introduced opposing testimony. The parties agreed, that the only questions to be put to the jury should be whether the deeds to *David* and *Joseph* were or were not fraudulent. SHEP-LEY J. before whom the trial was had, instructed the jury, that if they believed that the only consideration of the deed to *David Mallett* was the obligation to maintain his father, they must regard that as fraudulent in law as against the prior creditors of *Samuel;* and that the deed to *Joseph* should be regarded as fraudulent, if they found from the testimony, that it was the intention of both grantor and grantee thereby to defeat or delay the creditors of *Samuel,* although a full and valuable consideration might have been paid or secured. The jury found both deeds to be fraudulent. It was agreed by the parties, that judgment might be rendered according to the legal rights of the parties respectively.

*F. H. Allen,* for the respondents, contended, that the partition between *Mallett* and the other tenants in common confined the claim of the petitioners to the land set off to *Mallett,* though made after the mortgage.   *Crosby* v. *Allyn,* 5 *Greenl.* 453.   That the levy of *Ingersoll* on the 478 acres was void, as where the land is held by tenancy in common the law does not authorize a levy on any particular portion of it, and cannot prevail against any of the respondents.   *Bartlett* v. *Harlow,* 12 *Mass. R.* 348.   The same consequence does not follow in our title, as the petitioners claim by levy, where the statute must be pursued, and we claim by deed, where the parties can make such contract, as they choose.   He also contended, that as there was sufficient land to satisfy all legal claim of the petitioners, and the seven respondents, that the interest of the petitioners should be so set off, as not to interfere with the lots of those respondents.

VOL. IV.            12

*Rogers* argued for the petitioners, and cited *Adams* v. *Frothing-ham,* 3 *Mass. R.* 360; *Worthington* v. *Hylyer,* 4 *Mass. R.* 205; *Bridge* v. *Wellington,* 1 *Mass. R.* 227; *Vose* v. *Handy,* 2 *Greenl.* 350; *Child* v. *Fickett,* 4 *Greenl.* 473; *Drinkwater* v. *Sawyer,* 7 *Greenl.* 369; *Mussey* v. *Sanborn,* 15 *Mass. R.* 155; 9 *ib.* 34; 13 *ib.* 57; 17 *ib.* 282; 12 *ib.* 348.

The opinion of the Court was by

WESTON C. J. — With regard to the six thousand acres, mort-gaged to the trustees of *Williams' College,* by *Samuel T. Mallett,* by deed dated *June* 5, 1827, subject to the exceptions therein mentioned, the same having been assigned to the petitioners, noth-ing can be clearer, than that it is not legally competent for the mortgagor, without the consent of the mortgagees or their assigns, by a conveyance of any part of the mortgaged premises by metes and bounds, to withdraw from the lien created by the mortgage, the parts so conveyed.

As the lands, of which the respondents claim to be sole seized, were subject to the mortgage, their plea of sole seizin against the petitioners, the assignees of the mortgagees, cannot be sustained. It having been agreed, that judgment is to be rendered, according to the legal rights of the parties respectively, the principal question is, whether in addition to their title as mortgagees, the proportion of the petitioners is to be increased in consequence of the levy made by *Nathaniel Ingersoll,* in *July,* 1832, his title under that levy, whatever it was, having passed to the petitioners. For whether the respondents, or either of them, had or had not a right to redeem the land from the operation of the mortgage, need not be decided, as no such right, if it existed, has been attempted to be exercised.

It appears, that *Samuel T. Mallett,* in addition to the land by him mortgaged to the College, held by other titles in the township, about thirteen hundred acres, in common and undivided, until the greater part of his interest was set off in severalty, in 1828. The deed of release by him made in 1830 to *Joseph Mallett* cannot af-fect the levy, the same having been found fraudulent. Until the levy in 1832, *Mallett* had a right to sell by metes and bounds, the lots set off to him in severalty, subject to the paramount title of the

mortgagees. All the land claimed by the respondents, had been conveyed in severalty by *Mallett*, and the deeds from him were duly recorded, prior to the levy ; but the conveyance to *David Mallett* is out of the question, the same having been found to be fraudulent. There being land enough for the mortgagees, and also for the seven respondents, who claim by deeds not liable to be impeached for fraud, justice requires that the lands to be set off to the mortgagees, should not embrace any part of what has been conveyed to these respondents, if they can otherwise have a fair and equal partition.

This just and equitable course being taken, the title of the respondents to their lots is to be preferred to that derived from the levy, for prior to the time when that was made, the title of *Mallett* in these lots was transferred, so that his grantees would hold by estoppel, when the claims of the other co-tenants should be satisfied, by taking their lands elsewhere. It is true the title of these grantees might be defeated by setting off their lots to the petitioners, representing the mortgagees, but for that very reason it cannot equitably be done, if the mortgagees can have elsewhere their just proportion. It would seem, that *Mallett* had land enough, without touching these lots, to satisfy both the mortgagees, and what was set off by the levy. If so, in our judgment, the petitioners' claim to this part also is well sustained, for the levy is not by metes and bounds, but the proportion taken by the levy in common, although described as so many acres, must be understood to mean such a fractional proportion of the whole, as the number of acres taken, bore to the whole number owned by *Mallett*. Judgment for partition is to be entered for the petitioners, and commissioners to make partition are to be appointed, and the petitioners' part being set off, upon the principles before stated, final judgment will be entered accordingly.